Erik Gunderson, Oregon Bar No. 193669
GUNDERSON EMPLOYMENT LAW
707 SW Washington St.
Suite 1410
Portland, OR 97205
Telephone: (503) 535-0708
ErikG@GundersonEmploymentLaw.com

Attorneys for Plaintiff RICHARD HORN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| RICHARD HORN,<br><br>        Plaintiff,<br><br>  v.<br><br>PROVIDENCE HEALTH & SERVICES, a Washington corporation; PROVIDENCE HEALTH & SERVICES – OREGON, an Oregon corporation,<br><br>        Defendants. | CASE NO.<br><br>COMPLAINT FOR:<br>1.  VIOLATION OF 38 U.S.C. § 4311 (UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994)<br>2.  VIOLATION OF 29 U.S.C. § 621 (FEDERAL AGE DISCRIMINATION IN EMPLOYMENT ACT)<br>3.  VIOLATION OF OREGON REVISED STATUTE 659A.030 (STATE LAW AGE DISCRIMINATION)<br>4.  VIOLATION OF OREGON REVISED STATUTE 659A.040 (RETALIATION FOR CLAIMING WORKERS' COMPENSATION BENEFITS)<br>5.  VIOLATION OF OREGON REVISED STATUTE 659A.112 (DISABILITY DISCRIMINATION) |

6.  INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS

JURY TRIAL DEMANDED

Plaintiff RICHARD HORN ("HORN"), through counsel captioned hereinabove, complains against defendant PROVIDENCE HEALTH & SERVICES ("PROVIDENCE") as follows:

## BACKGROUND

1.      This action concerns retaliation and discrimination against the plaintiff by his former employer resulting from his status as an honorably-discharged veteran of the United States Marine Corps, his age over the age of 40, his having invoked his right to claim workers' compensation benefits, and in retaliation for his having invoked his right to claim discrimination and a hostile workplace environment resulting from his membership in protected classes, during the time he was employed as a security guard, at Defendant's facilities in Portland, Oregon, and Oregon City, Oregon.

## PARTIES

2.      HORN is a natural person and a resident of Vancouver, Washington. He voluntarily submits to the jurisdiction of this Court.

3.      PROVIDENCE HEALTH & SERVICES is a corporation organized according to the laws of the State of Washington, with its headquarters located in

Renton, Washington, and at least one principal decision-making location in Portland,

Oregon. Its principal business is the operation of clinics and hospitals. As part of

fulfilling those missions, it employs security guards.

4.    PROVIDENCE HEALTH & SERVICES – OREGON is a corporation

organized according to the laws of the State of Oregon, with its headquarters located in

Renton, Washington, and at least one principal decision-making location in Portland,

Oregon. Its principal business is the operation of clinics and hospitals. As part of

fulfilling those missions, it employs security guards.

5.    On information and belief, PROVIDENCE HEALTH & SERVICES and

PROVIDENCE HEALTH & SERVICES – OREGON are operated together as an

integrated business enterprise, possess common corporate decision-makers and officers,

have an identity of interests and operate in concert and as alter egos of one another. For

purposes of this litigation they are alleged to be co-employers of HORN. The enterprise

employs over 500 people engaged in interstate commerce and was for purposes of all

statutes invoked herein, HORN's "employer." Hereinafter, the enterprise is referred to

jointly as "PROVIDENCE."

## JURISDICTION

6.    Plaintiff asserts claims for violation of 38 U.S.C. § 4311 *et seq*. (the

Uniformed Services Employment and Reemployment Rights Act of 1994, 42 U.S.C. §

2000e-2 the Federal Civil Rights Act, and 29 U.S.C. § 621, the Federal Age

Discrimination in Employment Act. This Court therefore has subject matter jurisdiction

over this matter pursuant to 28 U.S.C. § 1331.

7.      Claims arising under the laws of the states of Oregon are asserted herein

pursuant to this Court's supplemental jurisdiction as provided by 28 U.S.C. § 1367(a) as

they arise out of the same transactions, occurrences, and events as those claims arising

out of Federal law, such that they form part of the same case and controversy, and

would ordinarily be such that one would expect them to be tried in a single judicial

proceeding.

8.      Plaintiff is a domiciliary of the state of Washington and voluntarily

subjects himself to the jurisdiction of this Court. From 19 December 2018 through 20

February 2020, he was employed by PROVIDENCE.

9.      PROVIDENCE is a domiciliary of the state of Oregon because it maintains

a significant decision-making center in Portland, Oregon.

## VENUE

10.     PROVIDENCE maintains multiple places of business in the District of

Oregon, and all of the principal events of the litigation occurred within Oregon. On

information and belief, all or substantially all of the individuals likely to be witnesses in

the case reside in or are employed in Oregon.

11.     Further, 38 U.S.C. § 4323(b)(3) provides that "In the case of an action against a private employer, the action may proceed in the United States district court for any district in which the private employer of the person maintains a place of business."

12.     Pursuant to 28 U.S.C § 1391(b)(2) and 38 U.S.C. § 4323(b)(3), venue is proper in the District of Oregon.

## FACTS COMMON TO ALL CLAIMS

13.     HORN was at all relevant times over the age of 40 years. He is a veteran of the United States Marine Corps, who received an honorable discharge in 2008. He has been diagnosed with post-traumatic stress disorder arising out of his military service. From 19 December 2018 through 20 February 2020, he was employed by PROVIDENCE. HORN was assigned as a "flexible officer," or a "floater," and variously deployed in a number of different facilities in Oregon.

14.     During his initial training, HORN's first line supervisor Josh Rupchek and his second line supervisor Mark Hanson advised HORN that they had concerns that "you might be a thumper and not a thinker, because of what you used to do." HORN understood the phrase "what you used to do" to refer to his previous service with the United States Marine Corps and the perception that he had after-effects of that service, which included PTSD.

15.    HORN was told by another PROVIDENCE employee Trey Moreland, on several occasions, that "military guys don't last long around here," and implied that he believed veterans to be of diminished intelligence compared with other employees. On other occasions Moreland interacted with HORN by saying that HORN smelled bad, was parking his vehicle in the wrong places, and was unwelcome in the ranks of PROVIDENCE's security guards.

16.    Efforts began nearly immediately to gather information suggesting HORN was not competent at his job, particularly among a clique of younger, non-veteran security officers.

17.    On 01 March 2019, an as-yet unidentified PROVIDENCE employee believed to be Dalton Malik falsely complained that HORN failed to properly put a patient's hand in restraints. Another security guard added to the report that "this is not the first time I have been informed of such issues," although no previous reports of any similar incident appear in HORN's personnel file. Later, another supervisory employee of PROVIDENCE, Reuben Moreland, suggested extending HORN's probationary period based on "a number of documented issues" although no other issues than these could be either identified or documented by Moreland.

18.    On 07 March 2019, Malik corresponded with Reuben Moreland and Daniel Gerkman concerning HORN, indicating "I know you have been talking about HORN's training/performance and I would just like to add to it from what I saw tonight

on 3/6/19. HORN didn't know where the lost and found was stored and claimed that he hadn't seen Reclaim Hub at all. It's hard to believe that after 3 or 4 weeks of training that he hasn't seen or been shown how to use the lost and found system. These are minor issues but minor issues begin to stack up." In fact, HORN was aware of the lost and found facility and there was only miscommunication about the name ("Reclaim Hub") used for it at the Willamette Falls facility. Malik frequently yelled at and was unpleasant to HORN in their interactions.

19.     Daniel Gerkman falsely accused HORN of failing to respond to calls.

20.     HORN was frequently asked harassing questions regarding trivial facets of his work, most frequently regarding which doors he had used to access the facility and where he had parked his car. No other security guards were similarly treated. Employees who did these things included Dalton, Gerkman, Malik, and Tim Johnson.

21.     Other security officers, who were not veterans and who were younger than HORN, shunned him. HORN initially attributed this behavior to being new to the workforce, and later came to believe it related to his age and his prior military service. These included Malik, Gerkman, and a third guard believed to be named Luis Meja.

22.     HORN also later observed other older security officers, and other security officers with military service backgrounds, be treated in similar ways.

23.     Rupchek, who was at the time HORN's first-line supervisor at St. Vincent's, confronted HORN in March of 2019, stating that he had received a number of

complaints about HORN from other security officers, to the effect that HORN had been

forgetting things. HORN advised that he had incidents of memory loss resulting from

post-traumatic stress disorder, which HORN believed had originated during his

military service. Rupchek suggested that HORN see a counselor and assured HORN

that HORN's PTSD would not affect his future employment. This disclosure to a

supervisor put PROVIDENCE on notice of HORN's condition and need for

accommodation. HORN also advised Hanson and another employee who was

identified to HORN as his liaison to Human Resources, Tina Ceja, of his condition.

However, the only efforts at an interactive process which occurred were Rupchek's

assurances in this conversation.

24.     HORN's complaints of ill-treatment by peers and supervisors to Human

Resources produced a statement from Ceja on 04 March 2019 that she had received

numerous emails and complaints about HORN from other security officers, including

twelve on a single day. Some of these involved accusations of gossiping and were

accompanied by name-calling. Ceja stated that believed that HORN was being "bullied"

and "harassed" by his peers. Over time, she responded to these issues by changing

HORN's status from a "floater" to a guard stationed at one or another single facility.

25.     However, this method of responding to the harassment proved

ineffective. HORN continued to encounter harassing conduct from younger, non-

veteran peers. HORN was repeatedly singled out for heightened scrutiny regarding his

conduct. This manifested in, among other things, calls and meetings with superiors and former superiors, including Eric Lord, Mark Hanson, Reuben Moreland, and Josh Rupchek. Substantial emphasis in these interactions was placed on trivial matters not directed at other security officers, including where HORN parked, whether HORN's driver's license had been suspended, and whether HORN's use of cigarettes left an unpleasant odor on his possessions (which HORN sometimes found moved without his consent) and his person, false accusations of aggression, and his occasional use of profane language. Further, HORN encountered false rumors that he was using and dealing steroids. Horn frequently encountered confusion from his supervisors regarding scheduling, and false accusations of not being visibly on duty. No other non-veteran, younger officers encountered similar difficulties or treatment.

26.    HORN continued to make complaints about this treatment, which again resulted transfers to other locations. HORN did well at the Providence Willamette Falls Medical Center in Oregon City. HORN was transferred there in July of 2019. There, HORN got along well with his first-line supervisor but continued to receive harassment from Hanson, his second-line superior, regarding HORN's vehicular registration, driver's license, and child support obligations.

27.    On the evening of 25 October 2019, HORN was left alone with a patient who had been identified with the phrase "Code Gray," indicative of a patient potentially likely to become violent. PROVIDENCE protocol was such that patients

identified with the "Code Gray" designation were to be handled by two or more

security guards, for the protection of both the guards and other hospital staff. However,

HORN's assigned partner, Troy Bonner, was absent for reasons unknown but suspected

to be related to his having been called away to another duty by or at the behest of Mark

Hanson. (Bonner subsequently denied having been aware there was any "Code Gray"

incident.) The patient did become violent and required restraint; HORN and three

police officers were able to restrain the patient but not before HORN sustained a serious

injury to his shoulder during the altercation.

28.     The next day, Hanson called HORN at home, and discouraged HORN

from filing a workers' compensation claim for the previous night's injuries. Hanson told

HORN, "things will get bad for you," if he proceeded to file the claim. Hanson said he

had reviewed video of the incident and did not believe it was possible for HORN to

have been hurt. However, HORN was in great physical pain and went to Newberg

Hospital himself to seek treatment. He later proceeded with filing a claim for workers'

compensation benefits, which remains pending to this day.

29.     After the injury, HORN required modified physical duty, and there was

substantial confusion regarding an appropriate temporary transitional duty (TTD)

assignment. Younger, non-veteran security officers continued to subject HORN to

heightened scrutiny and complaints, and HORN continued to receive negative

treatment from Hanson, including contradictory and confusing direction from Hanson

regarding how HORN was to execute his TTD assignment. Ultimately, HORN was

assigned to a non-security TTD assignment based upon Mark Hanson's failure to

respond to insurance requests for modified security duty. No such treatment was

directed at non-veteran, younger, or non-workers compensation claimant officers.

30.     The harassment continued. On 22 November 2019, Troy Bonner

complained about "Richard DICK HORN" engaging in unspecified acts of

rumormongering, which was raised later by Hanson as part of the reasons for HORN's

subsequent termination. Hanson repeatedly accused HORN of no-showing for assigned

shifts after HORN had received contradictory instructions regarding where and when

HORN was to report for duty, gave HORN heightened scrutiny regarding his schedule

for reporting to work, made critical inquiries regarding how HORN accessed the

building, and interfered with HORN's compensation for his work, ultimately accusing

HORN of not working at all.

31.     In December of 2019, PROVIDENCE managerial employee Allen Zaugg,

requested a meeting with HORN wherein, he confronted HORN with allegations that

HORN had been rumormongering against Reuben Moreland. HORN denied having

participated in any such rumormongering, and said that he had been performing his

TTD duty while he had overheard other security guards gossiping and failed to

participate in those conversations. Zaugg stated that he had received contrary

complaints, and warned HORN to stop all rumormongering. He told HORN "People

don't seem to like you. Why do you think that is?" HORN stated that he had experienced problems with people throughout his employment, and suggested that if Zaugg wanted to learn more about the situation, he should consult with Ceja and Hanson, particularly concerning prior personal conflicts at St. Vincent's.

32.    On 14 January 2020, Hanson again initiated a confrontation with HORN, which included Hanson calling HORN a "dumb Marine," and HORN seeking to terminate the conversation thereafter. HORN sought to report the incident to Human Resources. It was only at this point in time that HORN realized that Ceja was not herself a Human Resources officer, so whether his previous complaints to Ceja made their way to Human Resources remains unclear.

33.    HORN described the "dumb Marine" incident to the insurance adjuster handling his worker's compensation claim, Caitlin Arnold of Sedgwick Claims Services. Ms. Arnold reported the conversation to PROVIDENCE. PROVIDENCE's investigation of this conversation included reports by HORN to PROVIDENCE's investigator and his TTD supervisor of a hostile workplace environment motivated in significant part by HORN's military service status.

34.    On 23 January 2020, HORN met with Hanson and his then first-line supervisor Chris Johnson and a representative from Human Resources. HORN related several incidents of ill treatment by his peers over the course of his employment, management's repeated failure to have prevented that treatment, and his continued

belief that this was motivated in by those fellow officers perceiving him as being older and having military experience, which they disliked. HORN also indicated that he did not think that his superiors had taken adequate account of his post-traumatic stress disorder or considered the degree to which his medical condition could have impacted his ability to perform essential functions of his job, nor engaged in any interactive process to identify appropriate and reasonable accommodations. Instead, the PROVIDENCE employees indicated that they believed HORN had been acting unprofessionally, questioned his veracity, and indicated disapproval of HORN's having sought workers' compensation benefits and transitional duties.

35.     Thereafter, a follow-up meeting was apparently sought but PROVIDENCE failed to notify HORN of the request.

36.     On 20 February 2020, Hanson circulated an e-mail to a large number of PROVIDENCE employees, believed to be in the security division, advising "Richard HORN is no longer employed with Providence. We wish Richard the best in his future endeavors." Another security guard called HORN to verify this e-mail, and this was how HORN learned he had been fired.

37.     HORN has suffered a hostile workplace environment, and was terminated, for reasons which he believes were substantially based upon his status as a veteran, his age, and for having made a claim for workers' compensation insurance benefits.

38.     Defendants acted intentionally, maliciously, and with improper, discriminatory and abusive motives. Defendants knew, or recklessly disregarded the likelihood that, their actions were contrary to a variety of laws and powerful social norms, and proceeded nevertheless with callous and conscious indifference to plaintiff's health, safety, welfare, and rights. Defendants should be assessed punitive damages in an amount to be determined by the finder of fact sufficient to punish them and to deter them and others similarly-situated from similar conduct in the future.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 38 U.S.C. § 4311 (UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994)**
**Against all Defendants**

39.     Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 38 as if set forth herein fully.

40.     HORN is an honorably discharged veteran of the United States Marine Corps and therefore a "person" for purposes of the Uniformed Services Employment and Reemployment Rights Act of 1994.

41.     HORN was subjected by PROVIDENCE to a hostile workplace environment materially different from the reasonable expectations of a similarly-situated ordinary worker. Substantial reasons for the hostile workplace environment were HORN's status as a military veteran and HORN's making of complaints

indicating that he suspected anti-military discrimination was at least partially to blame for the hostile workplace environment.

42.     Horn complained internally to PROVIDENCE of the hostile workplace environment, but PROVIDENCE failed to take prompt, effective remedial action to rectify the workplace environment.

43.     HORN's employment was ultimately terminated by PROVIDENCE. In ending the employment relationship, PROVIDENCE was substantially motivated by HORN's status as a military veteran.

44.     Hanson was a person whose recommendations and advice to the entity regarding responses to HORN's complaints would be considered decisive and effectively final. Hanson failed to meaningfully respond to or investigate HORN's complaints, failed to control other employees to eliminate or even mitigate the hostility of HORN's workplace environment, and was involved in and a motive force behind HORN's ultimate termination. Therefore, at all relevant times hereto, PROVIDENCE acted willfully, including but not limited to acting via the supervision, direction, and control of Hanson.

45.     HORN has suffered loss of wages and benefits thereby, in an amount to be proven by evidence to be adduced at the time of trial.

46.    By virtue of PROVIDENCE's willful conduct, HORN is also entitled to liquidated damages in an amount equal to the amount of wages and benefits he has lost.

47.    HORN has also been obliged to retain attorneys and expert witnesses to assist him in presenting this claim and suit, and incurred attorney's and experts' fees and costs of suit, in an amount to be proven by evidence to be adduced after the trial of this matter.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 29 U.S.C. § 621 (FEDERAL AGE DISCRIMINATION IN EMPLOYMENT ACT)**
**Against all Defendants**

48.    Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 47 as if set forth herein fully.

49.    HORN is, and at all relevant times hereto was, a person over the age of 40 years.

50.    HORN was subjected by PROVIDENCE to a hostile workplace environment materially different from the reasonable expectations of a similarly-situated ordinary worker. Substantial reasons for the hostile workplace environment were HORN's status as a worker over the age of 40 and older than many of his peers,

and HORN's making of complaints indicating that he suspected age discrimination was at least partially to blame for the hostile workplace environment.

51.    was HORN's status as an older worker.

52.    Horn complained internally to PROVIDENCE of the hostile workplace environment, but PROVIDENCE failed to take prompt, effective remedial action to rectify the workplace environment.

53.    HORN's employment was ultimately terminated by PROVIDENCE. In ending the employment relationship, PROVIDENCE was substantially motivated by HORN's age.

54.    HORN timely presented to the Oregon Bureau of Labor and Industries, and concurrently to the Federal Equal Employment Opportunity Commission, the facts underlying this lawsuit, and has timely received a right to sue notice from those entities. This lawsuit is filed within 90 days of the issuance of that right to sue notice.

55.    HORN has suffered economic and non-economic damage thereby, in an amount to be proven by evidence to be adduced at the time of trial.

56.    HORN has also been obliged to retain attorneys and expert witnesses to assist him in presenting this claim and suit, and incurred attorney's and experts' fees and costs of suit, in an amount to be proven by evidence to be adduced after the trial of this matter.

**THIRD CAUSE OF ACTION**
**VIOLATION OF OREGON REVISED STATUTE 659A.030**
**(STATE LAW AGE DISCRIMINATION)**
**Against all Defendants**

57.     Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 56 as if set forth herein fully.

58.     HORN was subjected by PROVIDENCE to a hostile workplace environment materially different from the reasonable expectations of a similarly-situated ordinary worker. Substantial reasons for the hostile workplace environment were HORN's status as a worker over the age of 40 and older than many of his peers, and HORN's making of complaints indicating that he suspected age discrimination was at least partially to blame for the hostile workplace environment.

59.     Horn complained internally to PROVIDENCE of the hostile workplace environment, but PROVIDENCE failed to take prompt, effective remedial action to rectify the workplace environment.

60.     HORN's employment was ultimately terminated by PROVIDENCE. In ending the employment relationship, PROVIDENCE was substantially motivated by HORN's age.

61.     HORN has suffered economic and non-economic damage thereby, in an amount to be proven by evidence to be adduced at the time of trial.

62.    HORN has also been obliged to retain attorneys and expert witnesses to assist him in presenting this claim and suit, and incurred attorney's and experts' fees and costs of suit, in an amount to be proven by evidence to be adduced after the trial of this matter.

## FOURTH CAUSE OF ACTION
## VIOLATION OF OREGON REVISED STATUTE 659A.040 (RETALIATION FOR CLAIMING WORKERS' COMPENSATION BENEFITS)
### Against all Defendants

63.    Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 62 as if set forth herein fully.

64.    On 25 October 2019, HORN was injured on the job.

65.    PROVIDENCE discouraged HORN from seeking workers' compensation benefits and making a claim for those benefits. As alleged above, PROVIDENCE employee and HORN's second-line supervisor Hanson called HORN at home and told him "things will get bad for you" if HORN proceeded to file a claim for benefits.

66.    Nevertheless, HORN did seek workers' compensation benefits. Thereafter, HORN was subjected to interference with his ability to execute temporary transitional duty (TTD). HORN was subjected to heightened scrutiny and analysis of his work. HORN was subjected to a hostile workplace environment including resentment and unusual amounts of trivial complaints from colleagues. HORN received contradictory

and confusing direction from Hanson and other supervisors regarding how to execute his TTD assignment.

67.     HORN's employment was ultimately terminated by PROVIDENCE. In ending the employment relationship, PROVIDENCE was substantially motivated by HORN's having invoked the workers' compensation system.

68.     HORN has suffered economic and non-economic damage thereby, in an amount to be proven by evidence to be adduced at the time of trial.

69.     HORN has also been obliged to retain attorneys and expert witnesses to assist him in presenting this claim and suit, and incurred attorney's and experts' fees and costs of suit, in an amount to be proven by evidence to be adduced after the trial of this matter.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF OREGON REVISED STATUTE 659A.112 (DISABILITY DISCRIMINATION)**
**Against all Defendants**

70.     Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 69 as if set forth herein fully.

71.     HORN is a person with a physical or mental impairment that substantial limits one or more major life activities, diagnosed as post-traumatic stress disorder, a "disability" as defined by ORS 659A.104(A).

72.     HORN put defendants on notice of the existence of this disability during the course and scope of his employment as described hereinabove including as in paragraphs 14 and 34, supra.

73.     Defendants failed to accommodate HORN's disability, engage in any form of interactive process with him, or offer any accommodation whatsoever, and instead discriminated against HORN by holding him up to heightened scrutiny and subjecting him to a hostile workplace environment, and ultimately terminating him, as described herein.

74.     HORN has suffered economic and non-economic damage thereby, in an amount to be proven by evidence to be adduced at the time of trial.

75.     HORN has also been obliged to retain attorneys and expert witnesses to assist him in presenting this claim and suit, and incurred attorney's and experts' fees and costs of suit, in an amount to be proven by evidence to be adduced after the trial of this matter.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against all Defendants

76.     Plaintiff restates and realleges the contents of paragraphs **Error! Reference source not found.** through 75 as if set forth herein fully.

77.     In acting as described herein, though Hanson and other agents of PROVIDENCE, PROVIDENCE intended to inflict severe emotional distress on HORN, motivated by a desire to, *inter alia*, discourage him from seeking to continue employment with PROVIDENCE.

78.     In so acting, PROVIDENCE caused HORN severe emotional distress.

79.     PROVIDENCE's actions were an extraordinary transgression of the bounds of socially tolerable behavior.

80.     HORN has suffered economic and non-economic damage thereby, in an amount to be proven by evidence to be adduced at the time of trial.

**PRAYER FOR RELIEF**

By and for the reason set forth herein above, HORN prays that the Court grant judgment in his favor and against PROVIDENCE as follows:

1.     For economic damages, including but not limited to loss of wages and benefits, according to proof to be adduced by evidence to be produced at the time of trial; and

2.     For non-economic damages, including but not limited to damages to compensate for HORN's emotional distress, aggravation of his post-traumatic stress disorder, anxiety, indignity, humiliation, and mental suffering, according to proof to be adduced by evidence to be produced at the time of trial; and

3.      For liquidated damages, in an amount equal to HORN's loss of wages and

benefits; and

4.      For punitive damages, in an amount as to be determined by the finder of

fact to be sufficient to punish PROVIDENCE and deter it and others from similar

conduct in the future; and

5.      For costs of suit and expert witness fees herein incurred; and

6.      For attorney's fees herein incurred, according to proof to be adduced by

evidence to be produced after the finding of liability; and

7.      For pre-judgment and post-judgment interest on all amounts due to

plaintiff as a result of this action, at the legal rate; and

8.    For such other and further relief as may be just and proper.

September 23, 2021                    Respectfully Submitted,

                                     GUNDERSON EMPLOYMENT LAW


                                     /s/  Erik Gunderson
                                     By:  Erik Gunderson
                                     Oregon Bar No. 193669
                                     Attorneys for Plaintiff RICHARD
                                     HORN


## DEMAND FOR JURY TRIAL


Plaintiff demands a trial by jury as to all claims triable by a jury.

September 23, 2021                    Respectfully Submitted,

                                     GUNDERSON EMPLOYMENT LAW


                                     /s/  Erik Gunderson
                                     By:  Erik Gunderson
                                     Oregon Bar No. 193669
                                     Attorneys for Plaintiff RICHARD
                                     HORN